***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Young and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Upon reconsideration, the Full Commission believes the issue of estoppel should be considered.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was self insured at all relevant times.
4. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 13, 1955, until January 1, 1997.
5. The parties stipulated that plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for thirty days within a seven-month period, as set forth in N.C. Gen. Stat. § 97-57.
6. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. The parties stipulated that plaintiff's income 52 weeks prior to his diagnosis of asbestos was $62,719.81, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act. The parties further stipulated that plaintiff's date of diagnosis was April 27, 2000.
8. The Pre-Trial Agreement of the parties for this case is stipulated into evidence.
9. The employment and income records of plaintiff are stipulated into evidence.
10. The transcript of Joseph Wendlick's testimony at civil trial, his curriculum vitae, and other documentation produced by defendant in discovery has been stipulated into evidence.
11. The relevant medical records of plaintiff, including documentation from Drs. Pape, Curseen, Bernstein, Dula, and Weaver have been stipulated into evidence.
12. Defendant stipulates that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program contained in N.C. Gen. Stat. §§ 97-60 through 97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility.
13. Defendant stipulates that the medical monitoring procedures used in its asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina.
14. Defendant stipulates that the Weyerhaeuser facilities that Mr. Joseph Wendlick referred to in his deposition transcript, which has been stipulated into evidence, included the facilities in North Carolina.
15. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
16. The contested issues before the Commission are:
 (a) Did plaintiff suffer from a compensable asbestos-related occupational disease and/or diseases and/or a complication, aggravation, or acceleration of the disease? If so, what disease and/or diseases?
(b) What benefits is plaintiff entitled to receive, if any?
 (c) Whether plaintiff is entitled to the additional panel examinations as provided in N.C. Gen. Stat. § 97-61.3 to determine what, if any, final compensation he may be due?
 (d) Whether plaintiff is entitled to attorney fees for unreasonably defending this matter?
 (e) Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 (f) Is plaintiff engaged in an occupation that has been found by the Industrial Commission to expose employees to the hazards of asbestosis under the provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7?
 (g) At the time of the diagnosis, was plaintiff subject to removal from an occupation that exposed plaintiff to the hazards of asbestosis, as contemplated by N.C. Gen. Stat. §§ 97-60 through 97-61.7?
17. On March 12, 2001, during the beginning of Dr. Pape's testimony, defendant stipulated on the record that plaintiff does suffer from asbestosis. Consequently, Dr. Pape's testimony is rendered unnecessary. Defendant agreed to stipulate that plaintiff has asbestosis after reviewing Dr. Pape's addendum to his Advisory Medical Panel Report dated January 19, 2001. Thus, this issue is no longer contested.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 13, 1955, until January 1, 1997.
2. Plaintiff was exposed to asbestos dust at defendant's facility in Plymouth, North Carolina, during his employment. Plaintiff was exposed to asbestos insulation on digesters and surrounding steam pipes when he would tear off the insulation to work on the pipes. He was also exposed to asbestos dust in the bleach plant, where he was a supervisor for approximately 20 years. The bleach plant had asbestos-wrapped steam lines that pipe fitters would work on while plaintiff was in the same area. In addition, plaintiff would work in areas where employees would blow off pipes with an air hose and sweep up debris of asbestos insulation and dust. Defendant did not provide plaintiff with a respirator to protect him against asbestos exposure.
3. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than 30 working days or parts thereof within seven consecutive months from 1955 to 1999.
4. Dr. Richard Bernstein diagnosed plaintiff with asbestosis on April 27, 2000, after plaintiff had left the employment of Weyerhaeuser. Dr. Bernstein's diagnosis was based upon plaintiff's history of occupational asbestos exposure and adequate latency period, his chest radiograph, which showed significant parenchymal disease in the lower and middle lobes, his history of mild dyspnea on exertion, as well as pulmonary function testing. Dr. Bernstein recommended close clinical follow-up including annual pulmonary re-evaluations.
5. Dr. Albert Curseen examined plaintiff on October 11, 2000, and confirmed plaintiff's earlier diagnosis of asbestosis by Dr. Bernstein.
6. Dr. Gregory Pape performed the Advisory Medical Evaluation on October 6, 2000, and determined that plaintiff probably does have mild asbestosis. He based his diagnosis upon plaintiff's history of significant asbestos exposure and adequate latency period, his obstruction due to asthma, his somewhat lower total lung capacity than would be expected based upon his degree of obstruction, and findings of increased interstitial markings consistent with asbestosis on plaintiff's CT scan.
7. Dr. Fred Dula interpreted a CT scan and chest x-ray dated August 10, 2000, and determined that there were interstitial changes in a distribution, which would be consistent with asbestosis.
8. Dr. Michael Weaver interpreted a chest x-ray dated April 1, 2000, and determined that there were parenchymal abnormalities present consistent with pneumoconiosis of asbestosis.
9. Defendant failed to produce any conflicting medical evidence to refute these findings.
10. Plaintiff developed asbestosis, an occupational disease, as a result of his employment with defendant. Plaintiff's employment with defendant placed him at an increased risk of developing asbestosis as compared to members of the general public.
11. Plaintiff developed asbestos-related pleural disease, an occupational disease, as a result of his employment with defendant. Plaintiff's employment with defendant placed him at an increased risk of developing asbestos-related pleural disease as compared to members of the general public.
12. Plaintiff's pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
13. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by its own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C.G.S. § 97-60 through 97-61.7.
14. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
15. Plaintiff may have relied upon defendant's representations to him and to his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
16. Plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
17. N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional.
18. Plaintiff's income for the fifty-two (52) weeks prior to his diagnosis in 2000 was $67,719.81, which is sufficient to produce the maximum weekly compensation rate for 2000, $588.00.
19. Plaintiff's asbestos exposure while employed by Weyerhaeuser has caused him to have permanent injury to each lung, each lung being a separate important internal organ for which no other compensation is payable under any other subdivision of N.C. Gen. Stat. § 97-31. Reasonable compensation for the permanent injury to each lung is judged to be $20,000.00 per lung.
By high-resolution CT scan of plaintiff's chest on August 10, 2000, it was determined that plaintiff had pleural and parenchymal scarring on both lungs at the top, with one plaque in the right hemithorax and possible chronic scarring in the right middle lobe and lingular areas.
Plaintiff is at increased risk for further deterioration of his pulmonary functions. He is also at risk of development of mesothelioma and bronchogenic carcinoma. These risks are present even without further asbestos exposure.
20. Webster's Dictionary defines pleura as the delicate serous membrane that lines each half of the thorax of mammals and is folded back over the surface of the lung of the same side. WebMD states that the pleura consists of two thin layers of tissue. One layer lines the inside chest wall and the other covers the lungs. The tiny space between the two layers is called the pleural cavity. This cavity normally contains a small amount of lubricating fluid that allows the two layers to slide over each other when a person breathes.http://my.webmd.com/content/healthwise/139/34664
21. Plaintiff's asbestos exposure while employed by Weyerhaeuser has caused him to have permanent injury to the set of pleura enclosing each lung, each such set of pleura being a separate important internal organ for which no other compensation is payable under any other subdivision of N.C. Gen. Stat. § 97-31. Symmetric pleural thickening was noted at the top of each pleura. Reasonable compensation for the permanent injury to each set of pleura is judged to be $20,000.00 per set of pleura.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Prior to his retirement, plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
4. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. HeatherlinProperties, supra, the doctrine was raised for the first time by the Court of Appeals itself ex meru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
5. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos-related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
6. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co.,141 N.C. App. 482, 539 S.E.2d 380 (2000), disc. review denied,353 N.C. 525, 549 S.E.2d 858 (2001), and in Clark v. ITT GrinnellIndustrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. §97-61.5 are constitutional.
8. "In case of the loss of or permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section [§ 97-31], the Industrial Commission may award proper and equitable compensation not to exceed twenty thousand dollars ($20,000). N.C. Gen. Stat. § 97-31(24). Each lung is an important internal organ for which no compensation is payable under any other subdivision of Section 97-31. Each set of pleura is an important internal organ for which no compensation is payable under any other subdivision of Section 97-31.
9. Proper and equitable compensation for permanent injury to each lung from asbestoses exposure is $20,000 per lung.
10. Proper and equitable compensation for permanent injury to each pleura from asbestoses exposure is $20,000 per pleura.
11. In Harrell v. Harriet Henderson Yarns, 314 N.C. 566,336 S.E.2d 47 (1985), Justice Exum wrote:
 "Even if the Industrial Commission determines that Mrs. Harrell's wage-earning disability was not substantially due to occupational disease, the Commission may consider awarding compensation under N.C. Gen. Stat. § 97-31(24). G.S. § 97-31 is a schedule of losses for which compensation is payable even if a claimant does not demonstrate loss of wage-earning capacity. Losses included in the schedule are conclusively presumed to diminish wage-earning ability. Perry v. Hibriten Furniture Co., 296 N.C. 88. 94-95. 249 S.E.2d 397. 401 (1978); Watts v. Brewer, 243 N.C. 422, 424, 90 S.E.2d 764, 767
(1956); Loflin v. Loflin, 13 N.C. App. 574, 577, 186 S.E.2d 660, 662. cert denied, 281 N.C. 154. 187 S.E.2d 585 (1972).
 Defendants argue no compensation may be awarded under G.S. § 97-31 unless claimant suffers disablement or death as a result of occupational disease. They rely upon G.S. § 97-52 which provides, "Disablement or death of an employee resulting from occupational disease . . . shall be treated as the happening of an injury by accident" within the meaning of the Worker's Compensation Act. N.C. Gen. Stat. § 97-52 (1979) (emphasis provided). Disablement (or death), they argue, is a condition that must occur before G.S. § 97-52 makes occupational diseases compensable.
 Defendant's argument is based on an overly technical reading of the statute. The purpose of G.S. § 97-52
is to enable a worker to recover for disability caused by occupational disease under G.S. § 97-29. The words "disablement or death" merely describe a condition that must occur before recovery may be had under G.S. § 97-29. They do not predicate recovery under G.S. § 97-31 upon disability. Recovery under that section, as noted above, is permitted regardless of actual ability or inability to earn wages. The obvious intent of the legislature in enacting G.S. § 97-52 was to permit and not restrict recovery for occupational diseases. G.S. § 97-52, therefore, does not require that disability be shown as a condition to recovery under the schedule for occupational disease. * * *
 The only question that need concern us is whether "loss" as used in G.S. § 97-31(24) means loss of use. This question is one of legislative intent. We believe the legislature intended for G.S. § 97-31 to apply to occupational disease and hold that loss as used in G.S. § 97-31(24) includes loss of use.
 All the organs of the body have a function and when an organ ceases functioning in whole or in part, it is a loss to the body as surely as if it or that part which no longer functions were physically detached." * * *
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation for 104 weeks pursuant to N.C. Gen. Stat. § 97-61.5(b) is held in abeyance pending further evidence on the issue of estoppel.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief, or lessen his disability.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission.
4. Defendant shall pay to plaintiff the sum of $80,000.00, consisting of $20,000 each for permanent injury to each lung and $20,000 each set of pleura for permanent injury to each set of pleura. Such compensation is subject to the attorney fee hereafter awarded.
5. Defendant shall pay an additional sum of 5% of the compensation awarded in paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18. These amounts are subject to the attorney fee hereafter awarded.
6. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, September 26, 2001, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
7. Defendant shall pay directly to plaintiff's counsel 25% of the compensation due and of the penalties due. This amount is judged to be reasonable attorney fees for this phase of this proceeding.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond that awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 14th day of April 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER