***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Young and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Young, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was self insured at all relevant times herein.
4. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from May 17, 1962, until September 8, 1982.
5. The parties stipulated that plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for thirty days within a seven-month period, as set forth in N.C. Gen. Stat. § 97-57.
6. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. The parties stipulated that plaintiff's income for the 52 weeks prior to ending his employment with defendant was $36,349.69.
8. The Pre-Trial Agreement of the parties for this case is stipulated into evidence.
9. The employment and income records of plaintiff are stipulated into evidence.
10. The transcript of Joseph Wendlick's testimony at civil trial, his curriculum vitae, and other documentation produced by defendant in discovery has been stipulated into evidence.
11. The relevant medical records of plaintiff, including documentation from Drs. Downie, Curseen, Bernstein, Dula, Lucas, Johnson, and Segerra, have been stipulated into evidence.
12. Defendant stipulates that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program contained in N.C. Gen. Stat. §§ 97-60 through 97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility.
13. Defendant stipulates that the medical monitoring procedures used in its asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina.
14. Defendant stipulates that the Weyerhaeuser facilities that Mr. Joseph Wendlick referred to in his deposition transcript, which has been stipulated into evidence, included the facilities in North Carolina.
15. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
16. The contested issues before the Commission are:
 (a) Did plaintiff suffer from a compensable asbestos-related occupational disease and/or diseases and/or a complication, aggravation, or acceleration of the disease? If so, what disease and/or diseases?
 (b) What benefits is plaintiff entitled to receive, if any?
 (c) Whether plaintiff is entitled to the additional panel examinations as provided in N.C. Gen. Stat. § 97-61.3 to determine what, if any, final compensation he may be due?
 (d) Whether plaintiff is entitled to attorney fees for unreasonably defending this matter?
 (e) Does N.C. Gen. Stat. §§ 97-60 through 97-61.7
apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 (f) Is plaintiff engaged in an occupation that has been found by the Industrial Commission to expose employees to the hazards of asbestosis under the provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7?
 (g) At the time of the diagnosis, was plaintiff subject to removal from an occupation that exposed plaintiff to the hazards of asbestosis, as contemplated by N.C. Gen. Stat. §§ 97-60 through 97-61.7?
17. At the hearing before the deputy commissioner, the parties submitted an Additional Stipulation, which outlined plaintiff's history of asbestos exposure while working for defendant.
18. On April 11, 2001, the parties submitted a signed letter in which defendant conceded that plaintiff has asbestosis. Thus, this issue is no longer contested.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from May 17, 1962, until September 8, 1982.
2. Plaintiff was exposed to asbestos dust on a regular basis at defendant's facility in Plymouth, North Carolina, during his employment. Plaintiff frequently worked in and around the boiler rooms, exposing him to asbestos insulation on the boilers, pipes, ducts, and valves. Plaintiff also worked on a paper machine, where he was exposed to asbestos from the asbestos-containing brake shoes and dryer felts used on the machine. He used compressed air to blow down the dust created from his work. Defendant did not provide plaintiff with a respirator for protection against asbestos exposure.
3. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than 30 working days or parts thereof within seven consecutive months from 1962 to 1982.
4. Dr. Richard Bernstein diagnosed plaintiff with asbestosis and asbestos-related pleural disease on April 27, 2000. Dr. Bernstein's diagnosis was based upon plaintiff's long history of occupational asbestos exposure and adequate latency period, his chest radiograph, his pleural disease, his dyspnea on exertion, and his decreased TLC and DLCO on pulmonary function testing. Dr. Bernstein reviewed the chest x-ray dated April 1, 2000, and determined that there were parenchymal and pleural abnormalities consistent with pneumoconiosis of asbestosis.
5. Dr. Albert Curseen diagnosed plaintiff with asbestosis and asbestos-related pleural disease on September 19, 2000. Dr. Curseen's diagnosis was based upon plaintiff's history of asbestos exposure, his chest radiograph, his dypnea on exertion with occasional shortness of breath, scattered bibasilar rales, clubbing of the fingernails, as well as pulmonary function testing. Dr. Curseen confirmed his diagnosis during his deposition on March 5, 2001.
6. Dr. Gordon Downie performed the Advisory Medical Evaluation and determined that plaintiff has asbestosis based upon plaintiff's long history of asbestos exposure with a proper time frame for the diagnosis of asbestos-related lung disease, radiographic changes consistent with asbestosis, restrictive pattern on his pulmonary function testing and progressive dypnea. Dr. Downie also confirmed his findings and conclusion during his live deposition on April 2, 2001.
7. Dr. Fred Dula interpreted a CT scan and chest x-ray dated July 18, 2000, and determined that there were interstitial and pleural changes present consistent with asbestosis.
8. Dr. Phillip Lucas interpreted a chest x-ray dated October 12, 1999, and determined that there were parenchymal abnormalities present consistent with pneumoconiosis of asbestosis.
9. Dr. James Johnson interpreted a chest x-ray dated October 12, 1999, and determined that there were parenchymal and pleural abnormalities present consistent with pneumoconiosis of asbestosis.
10. Dr. Jay T. Segerra interpreted a chest x-ray dated September 29, 2000, and determined that there were pleural and parenchymal abnormalities consistent with pulmonary asbestosis assuming a sufficient environmental exposure history and an adequate latent period.
11. Defendant failed to produce any conflicting medical evidence to refute these findings.
12. Plaintiff developed asbestosis, an occupational disease, as a result of his employment with defendant. Plaintiff's employment with defendant placed him at an increased risk of developing asbestosis as compared to members of the general public.
13. Plaintiff developed asbestos-related pleural disease, an occupational disease, as a result of his employment with defendant. Plaintiff's employment with defendant placed him at an increased risk of developing asbestos-related pleural disease as compared to members of the general public.
14. Plaintiff's pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
15. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by its own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7.
16. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
17 Plaintiff may have relied upon defendant's representations to him and to his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
18. Plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
19. N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel are hereby held in abeyance pending the outcome of further hearings.
This 22nd day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER