***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. Plaintiff was employed by defendant Weyerhaeuser Company at its facility in Plymouth, North Carolina, from October 31, 1955, to May 31, 1991.
2. Defendant Weyerhaeuser Company was self insured during the time of plaintiff's employment with defendant.
3. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant Weyerhaeuser Company, and plaintiff was exposed to asbestos for 30 days within a seven-month period as set forth in N.C. Gen. Stat. § 97-57.
4. Defendant manufacturers paper and paper products such as paper for crafts, paper bags, boxes, and pulp for baby diapers. The approximate size of employer's plant in Plymouth, North Carolina is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the building was asbestos-containing. Steam-producing boilers are used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipe that are covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp-paper.
5. Plaintiff held a number of different jobs during his 36 years of employment with Weyerhaeuser. When plaintiff first started, he worked in the power department and had to remove asbestos insulation from pipes and boilers. His other jobs at the facility included a variety of activities as a general laborer, where he was exposed to dust in various areas. Such dust was predominately from asbestos-containing insulation that surrounded pipes and boilers. Plaintiff also worked as a millwright and spent time working in the boiler room. In 1965, he began working in the area of fine paper rewinding and was exposed to asbestos dust arising from machine brake linings and clutches. Throughout his employment, plaintiff was exposed to dust from the industrial process, asbestos-insulated pipes, and asbestos-lined machine brakes and clutches.
6. Plaintiff does suffer from an occupational disease, asbestosis. He was diagnosed with asbestosis on December 10, 1997, by Dr. Dennis Darcey. Defendant agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records are stipulated into evidence for consideration by the Commission.
7. Plaintiff's income for the 52 weeks prior to his retirement on May 31, 1991, was $36,719.74, which is sufficient to yield the maximum rate allowable under the North Carolina Workers' Compensation Act for 1991, $406.00.
8. The parties are subject to the North Carolina Workers' Compensation Act, with defendant employing the requisite number of employees to be bound under the provisions thereof.
9. The parties agree that should N.C. Gen. Stat. §§ 97-60 through97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. Plaintiff contends he is entitled to an award of a ten percent (10%) penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. Defendant agrees that should the claim be found compensable, defendant shall pay an amount of five percent (5%) of all compensation exclusive of medical compensation.
11. The parties submitted into evidence plaintiff's medical records and reports by the following physicians: Ralph E. Whatley, M. D.; Dennis Darcey, M. D.; John Wu, M. D.; L. C. Rao, M. D.; Fred M. Dula, M. D.; and David Foreman, M. D.
12. The parties agree that the contested issues in this matter are as follows: (1) Does N.C.G.S. § 97-60 through § 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina; and (2) What benefits, monetary and/or medical, is plaintiff entitled to receive, if any?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its Plymouth facility on October 31, 1955 to May 31, 1991.
2. Plaintiff was exposed to asbestos-containing materials on a regular basis during his 36 years of employment with defendant. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than 30 working days or parts thereof within seven consecutive months between 1965 and 1991.
3. Plaintiff's medical records, which were stipulated into evidence, indicate the following:
 A. The Advisory Medical Evaluation Report written by Dr. Ralph Whatley, a panel physician who independently examined plaintiff at the request of the North Carolina Industrial Commission on May 11, 1999. Dr. Whatley took an occupational history of plaintiff, who stated that as a general laborer he was exposed to dust that had arisen from insulation surrounding pipes and boilers which were predominately asbestos-containing. When plaintiff worked in the fine paper rewinding area, he was exposed to asbestos-containing dust from the machine brakes and clutches as well as areas of insulated pipes. He remained in the fine paper area from 1965 until his retirement in 1991. Plaintiff reported that he does not smoke and never smoked.
 B. Dr. Whatley conducted a full physical evaluation including a blood test and pulmonary function testing. He also reviewed the chest x-ray dated July 19, 1999, along with other medical records. It was Dr. Whatley's conclusion that plaintiff meets the criteria for a diagnosis of asbestosis based on his exposure to asbestos dust, his long latency period, and interstitial changes on x-ray consistent with asbestosis. Dr. Whatley notes that because of plaintiff's exposure to asbestos, plaintiff is at some increased risk for developing lung cancer and mesothelioma. He recommended that plaintiff should receive an annual evaluation and chest radiograph by his personal physician.
 C. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University dated December 10, 1997. Dr. Darcey took a full occupational and medical history from plaintiff. Dr. Darcey also reviewed pulmonary function studies, chest films, and other medical records, as well as performed a full physical exam.
 D. It was the opinion of Dr. Darcey that plaintiff suffers from mild asbestosis. His conclusion was based on plaintiff's history of exposure to asbestos with adequate latency to develop asbestosis; an ILO chest x-ray B-read showing pleural and interstitial changes consistent with asbestosis; interstitial changes on the high resolution CT scan; and bilateral respiratory crackles heard in both lung bases.
 E. Dr. Darcey, as part of his report, recommended that plaintiff undergo periodic monitoring for progression of asbestos-related disease, including pulmonary function and chest x-rays. Dr. Darcey further recommended that plaintiff avoid further exposure to asbestos dust. Finally, in addition to plaintiff's increased risk of developing asbestosis, he was and remains at an increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, compared to non-exposed individuals.
 F. A CT scan and chest x-ray report dated August 19, 1997, interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and certified NIOSH B-reader. On the CT scan, Dr. Dula reported some definite interstitial changes in the lungs including short, thickened interlobar lines extending to the pleural surfaces and parenchymal bands that were more prominent in the bases and seen in the non-dependent portions of the lungs. On the chest x-ray, Dr. Dula reported interstitial changes in the lower halves of both lungs consisting of irregular linear opacities along with mild bilateral pleural thickening, which was more evident than on the CT scan. It was Dr. Dula's overall impression that there are interstitial and pleural changes which would be consistent with asbestosis in the appropriate clinical situation.
 G. A B-read report written by Dr. L. C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates who reviewed a chest x-ray dated October 22, 1999. Dr. Rao reported irregular opacities present in the lower lung zones bilaterally of category s/t with 1/1 profusion. It was Dr. Rao's conclusion that in the presence of a significant exposure to asbestos dust, these findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis.
 H. A B-read report written by Dr. John W. Wu, a NIOSH B-reader who reviewed the chest x-ray dated October 22, 1999. Dr. Wu reported parenchymal abnormalities consistent with pneumoconiosis in the lower, middle, and upper lung zones with 1/0 profusion.
 I. A B-read report written by Dr. David R. Foreman, a NIOSH B-reader who reviewed the chest x-ray dated October 22, 1999. Dr. Rofeman reported parenchymal abnormalities consistent with pneumoconiosis in the lower lung zones with 1/0 profusion along with pleural abnormalities consistent with pneumoconiosis.
4. Plaintiff does suffer from asbestosis and asbestos-related pleural disease as a result of his many years of asbestos exposure while employed by defendant. His pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and possible treatment in the future as a result of his asbestosis. Furthermore, medical monitoring is reasonably necessary due to plaintiff's increased risk of developing lung and other asbestos-related cancer.
5. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program contained in N.C. Gen. Stat. §§ 97-60 through 97-61.7. These procedures were in place during plaintiff's employment at the Plymouth facility. The Industrial Commission takes judicial notice of the facts so stipulated.
6. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that the medical monitoring procedures used in its asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
7. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that the Weyerhaeuser facilities that Mr. Joseph Wendlick referred to in his deposition transcript, which had been stipulated into evidence, included the facilities in North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
8. The Industrial Commission also takes judicial notice of the transcript of Joseph Wendlick's testimony at civil trial, the curriculum vitae of Joseph Wendlick and other documentation produced by defendant in discovery in I.C. No. 000344.
9. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that all the procedures used in Weyerhaeuser's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program which defendant contends is contained in N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. §97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility. The Industrial Commission takes judicial notice of the facts so stipulated.
10. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in North Carolina were the same. The Industrial Commission takes judicial notice of the facts so stipulated.
11. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript which has been stipulated into evidence included the facilities in North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
12. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by its own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. § 97-61.7.
13. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
14. Plaintiff may have relied upon defendant's representations to him and to his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
15. Plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
16. N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel are hereby held in abeyance pending the outcome of further hearings.
This 26th day of March 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER