JOE NEAL PURSER, EMPLOYEE, PLAINTIFF-APPELLEE v. HEATHERLIN PROPERTIES, EMPLOYER, DEFENDANT-APPELLANT, AND THE PMA GROUP, CARRIER, DEFENDANT-APPELLANT

No. COA99-446

(Filed 4 April 2000)

## 1. Workers' Compensation— independent contractor—owner of property as general contractor

The Industrial Commission erred in a workers' compensation action by finding that a brick mason was a subcontractor and therefore covered by N.C.G.S. § 97-19 where the owners of the land constructed homes under the business name of Heatherlin Properties, the business was listed as the general contractor on the building permit, and one of the individual owners (Mr. McMahan) built houses on the land under his general contracting license. It has been held that it is unreasonable to assume that a person could contract with himself to do something for his own benefit, making himself a general contractor if he should contract the job to another person. Assuming that Heatherlin Properties and the McMahans are distinct legal entities, the fact that Mr. McMahan was part of two distinct legal entities does not mean that he was legally bound to build himself a home and, since there was no agreement between the property's owner and another party, it must be concluded that McMahon was not a general contractor. Plaintiff, therefore, was an independent contractor rather than a subcontractor.

## 2. Workers' Compensation— denial of coverage—estoppel

A workers' compensation action was remanded to consider whether the facts supported a conclusion that the employer or the insurance carrier should be estopped from denying coverage where the plaintiff's partnership initially indicated that it had applied for workers' compensation insurance, the employer began deducting an amount to cover workers' compensation premiums when the Certificate of Insurance was not provided, and the Commission failed to consider the application of estoppel.

Appeal by defendants from opinion and award of the Full Industrial Commission entered 25 November 1998 by Commissioner Thomas J. Bloch. Heard in the Court of Appeals 17 February 2000.

*Poisson, Poisson, Bower & Clodfelter, by Fred D. Poisson, Jr., for plaintiff-appellee.*

*Alala Mullen Holland & Cooper P.A., by H. Randolph Sumner and Jesse V. Bone, Jr., for defendant-appellant Heatherlin Properties.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Erica B. Lewis and Mel J. Garofalo, for defendant-appellant The PMA Group.*

WYNN, Judge.

On 30 June 1993, the plaintiff Joe Neal Purser fell off of a roof while laying bricks for a chimney on a house owned by Ronnie and Linda McMahan. The McMahans rented properties and constructed new homes under the business name of Heatherlin Properties.[1] That entity employed the McMahans—Mr. McMahan built the houses under his general contractor's license, and Ms. McMahan performed administrative work for the entity. When building a house, Mr. McMahan listed himself as the general contractor on the building permit and listed Heatherlin Properties as the owner of the property, although the McMahans actually owned the land separate from their business.

Typically, Mr. McMahan hired contractors to build houses on the property. He required the contractors to show proof of worker's

1. The record on appeal is unclear as to the nature of the McMahan's property ownership. The record is also unclear as to whether Mr. McMahan alone owned Heatherlin Properties or whether both of the McMahans owned the business.

compensation insurance. If a contractor did not have insurance, Mr. McMahan deducted from the contractor's pay an amount sufficient to cover insurance premiums for the workers. In turn, the McMahans' insurer increased the premium amount charged to the McMahans. The McMahans' insurance agents informed them that this was standard practice in the contractor/subcontractor business.

In 1993, Heatherlin Properties hired C & J Masonry to perform bricklaying work on one of the houses owned by the McMahans and destined for sale through Heatherlin Properties. C & J Masonry, a partnership between Mr. Purser and Charles Costner, employed two other bricklayers. While working for Heatherlin Properties, C & J Masonry supplied its own equipment, decided how to perform the work, and set the hours and duties for the employees. On 30 June 1993, Mr. Purser fell off of the roof of the McMahans' house. He suffered displaced heel fractures bilaterally in both heels rendering him unable to work because of pain, joint injury, arthritis, and inability to stand.

Heatherlin Properties owned a worker's compensation insurance policy issued by The PMA Group. The payment provision of the policy provided that "[The PMA Group] will pay promptly when due the benefits required of you by the workers' compensation law." The policy contained a list of Heatherlin Properties' employees, which made no mention of bricklayers or other construction workers. The policy information was subject to verification and change by audit, which would adjust Heatherlin Properties' premiums accordingly.

Before C & J Masonry started work for Heatherlin Properties, Mr. Costner told the McMahans that his partnership had applied for worker's compensation insurance which they expected to take effect soon. They agreed that if the policy did not arrive soon, Heatherlin Properties would deduct worker's compensation premiums from its weekly payments to C & J Masonry to avoid work delay. Indeed, Mr. McMahan called Smith York Insurance Agency to find out what needed to be done to cover C & J Masonry under its policy. An agent of Smith York told him that all he needed to do was deduct the premiums from C & J Masonry's pay, and gave Mr. McMahan the deduction rate.

C & J Masonry began its bricklaying work for Heatherlin Properties in mid-June 1993. Because Mr. Costner told Mr. McMahan that he would leave C & J Masonry's Certificate of Insurance when he came to pick up their first week's pay on 24 June, Mr. McMahan did

not deduct any insurance premiums from that week's pay. However, C & J failed to provide Heatherlin Properties with a Certificate of Insurance by that date. Again, because Mr. Costner informed Mr. McMahan that he would provide the Certificate of Insurance when he picked up the second week's pay on 2 July, Mr. McMahan did not deduct premiums for the second week of work. But again C & J Masonry failed to provide Heatherlin Properties with a Certificate.

For the third week's pay, Mr. McMahan deducted an amount sufficient to cover the insurance premiums for the first three weeks of C & J Masonry's work. These deductions were based on the premium rate given to Mr. McMahan by the Smith York Insurance Agency. Mr. McMahan withheld these amounts so that when The PMA Group performed an audit at the end of the year, he could pay the additional premiums for the C & J Masonry employees.[2]

Mr. Purser injured himself during the course of his employment when he fell off of the roof on 30 June 1993. Ms. McMahan immediately filed a Form 19 ("Employers' Report of Injury to Employee") with the North Carolina Industrial Commission. Thereafter, Mr. Purser filed a Form 33 ("Request that a Claim Be Assigned for Hearing"). Heatherlin Properties filed a Form 33R, indicating that The PMA Group should provide coverage for Mr. Purser's claim if it was compensable. The PMA Group filed its own Form 33R, denying that coverage for Mr. Purser existed under Heatherlin Properties' insurance policy.

Deputy Commissioner Wanda Blanche Taylor found that C & J Masonry was an independent contractor and was therefore not subject to N.C. Gen. Stat. § 97-19 (1991). Accordingly, the deputy commissioner denied Mr. Purser's claim for worker's compensation benefits. But on appeal, the Full Commission reversed that decision holding instead that C & J Masonry was a subcontractor under N.C. Gen. Stat. § 97-19 which therefore entitled Mr. Purser to worker's compensation. Heatherlin Properties and The PMA Group appealed to this Court.

[1] Both appellants argue that Mr. Purser was an independent contractor, not a statutory employee under N.C. Gen. Stat. § 97-19, and

2. On 16 July 1993, Mr. McMahan learned that C & J Masonry had a worker's compensation policy which was effective from 6 July 1993 until 6 July 1994. Mr. McMahan refunded one week's worth of the premiums he had deducted from C & J Masonry's third paycheck.

therefore was not covered by North Carolina's worker's compensation laws. Since the parties challenge the nature of the employment relationship, we must make our own independent findings of fact to determine whether N.C. Gen. Stat. § 97-19 applies to Mr. Purser. *See Cook v. Norvell-Mackorell Real Estate Co.*, 99 N.C. App. 307, 309, 392 S.E.2d 758, 759 (1990).

By its own terms, N.C. Gen. Stat. § 97-19 ensures worker's compensation benefits when there is first a contract for work—i.e., the hiring of a general contractor—which is then sublet to a subcontractor. *See id.* at 310, 392 S.E.2d at 760. This statute does not apply to a situation wherein an employer directly hires an independent contractor. *See Cook*; *Mayhew v. Howell*, 102 N.C. App. 269, 401 S.E.2d 831, *aff'd*, 300 N.C. 113, 408 S.E.2d 853 (1991); *Green v. Spivey*, 236 N.C. 435, 73 S.E.2d 488 (1952).

In the case at bar, the Full Commission awarded benefits to Mr. Purser based on its finding that Mr. Purser was a subcontractor and not an independent contractor. The Full Commission reached this conclusion by finding that Heatherlin Properties was the general contractor for the owners of the land, the McMahans. The Commission reasoned that a "legal entity can be both an owner and a general contractor with respect to real estate" and presumably, it concluded that the McMahans, as owners of their property, contracted with themselves, as partners in Heatherlin Properties, thereby creating an employer/general contractor relationship.

We have previously addressed the issue of whether the owner of a piece of property may also be its general contractor for purposes of N.C. Gen. Stat. § 97-19. We have consistently rejected the concept that the owner of property may also be the general contractor for that property. *See Mayhew*, 102 N.C. App. at 273, 401 S.E.2d at 834; *Postell v. B & D Constr. Co.*, 105 N.C. App. 1, 8, 411 S.E.2d 413, 417, *disc. review denied*, 331 N.C. 286, 417 S.E.2d 253 (1992). To the contrary, we have held that it is unreasonable to assume that a person could contract with himself to do something for his own benefit, thereby making himself a general contractor if he should then contract that job to another person. *See Evans v. Lumber Co.*, 232 N.C. 111, 117, 59 S.E.2d 612, 616 (1950); *Mayhew*, 102 N.C. App. at 273, 401 S.E.2d at 833.

In the case at bar, we will assume that Heatherlin Properties and the McMahans are distinct legal entities. However, the fact remains that Mr. McMahan was on both sides of the equation. It is unreason-

able to think that Mr. McMahan as owner of the property contracted with himself as a partner or sole proprietor of Heatherlin Properties to legally force himself to build a house on the property. The fact that Mr. McMahan was part of two distinct legal entities does not mean that he was legally bound to build himself a house. Since there was no agreement between the property's owner and another party, we must conclude that Mr. McMahan was not a general contractor. C & J Masonry, therefore, was not a subcontractor, but was instead an independent contractor. The Industrial Commission erred when it found that Mr. Purser was covered by N.C. Gen. Stat. § 97-19.

[2] But our analysis of this factual scenario is not over because this case involves more than just a determination of whether Mr. Purser is covered by N.C. Gen. Stat. § 97-19. We must also consider the applicability of the doctrine of estoppel.

The doctrine of estoppel is a means of preventing a party from asserting a defense which is inconsistent with his prior conduct. *See Godley v. County of Pitt*, 306 N.C. 357, 360, 293 S.E.2d 167, 169 (1982). In particular, the rule is grounded in the premise that "it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications." *Thompson v. Soles*, 299 N.C. 484, 487, 263 S.E.2d 599, 602 (1980).

Although Mr. Purser is not protected by N.C. Gen. Stat. § 97-19, the defendants may nonetheless be estopped from denying liability of his worker's compensation claims. The law of estoppel applies in worker's compensation cases, and may be used to ensure coverage of a work-related injury. *See, e.g., Carroll v. Daniels and Daniels Constr. Co., Inc.*, 327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).

*Carroll v. Daniels and Daniels* is factually very similar to the case at bar and is almost directly on point. In that case, a general contractor hired a subcontractor to put siding on a house. The subcontractor did not have insurance of his own, so the general contractor told the subcontractor that his insurance company would provide the subcontractor with worker's compensation insurance. The general contractor agreed to deduct premiums from the subcontractor's pay. Two days after starting work, the subcontractor fell off a scaffold and injured himself. The insurance carrier denied the subcontractor's claim. N.C. Gen. Stat. § 97-19 (1985) as then written imposed liability on a general contractor for injuries to the employees of a subcontractor, but not for the injuries to the subcontractor himself.

The *Carroll* case is similar to the case at bar in that the plaintiff did not have his own insurance coverage and relied on his employer's promise of insurance before beginning work. Also, the plaintiff was not a worker covered by N.C. Gen. Stat. § 97-19. The insurance company did not expressly provide coverage to the plaintiff, it did not know about the plaintiff until after he was injured, and it never actually received the withheld premiums from the general contractor.

The Court in *Carroll* addressed the Industrial Commission's conclusion that because the general contractor had promised coverage, the insurance carrier was estopped from denying coverage. The Court did not fault this conclusion as always erroneous; rather, it said that the Commission failed to make findings of fact as to why the insurance carrier should be estopped from denying coverage. The Court, in remanding the case to the Industrial Commission, left open the possibility that the insurance carrier *could* be estopped from denying coverage, but the Industrial Commission would first have to make the proper findings of fact.

In the case at bar, the Industrial Commission failed to consider the application of the doctrine of estoppel to the factual scenario at hand. Accordingly, as in *Carroll*, we remand this matter to the Industrial Commission to consider whether the facts of this case support a conclusion that the employer or the insurance carrier should be estopped from denying coverage. Should the Industrial Commission determine that the doctrine of estoppel applies, it should determine whether one or both of the defendants are liable for the worker's compensation benefits. The Commission should rely on the findings of fact already made and may make any additional findings it deems necessary.

Remanded with instructions.

Judges MARTIN and HUNTER concur.