***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Defendant was non-insured at all relevant times.
2. Plaintiff sustained an injury on 4 November 1999.
3. The parties stipulated into evidence as Stipulated Exhibit 1, plaintiff's medical records.
4. The parties stipulated into evidence as Stipulated Exhibit 2, plaintiff's records from Coastal Rehabilitation Medicine Associates.
5. The parties stipulated into evidence as Stipulated Exhibit 3, plaintiff's income tax returns from 1998 and 1999.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old and had completed the twelfth grade. Plaintiff previously worked as a motorcycle mechanic, but for the ten years prior to the hearing before the Deputy Commissioner, he had worked in construction.
2. In February 1990, plaintiff had a work-related back injury and was out of work for three or more years. During that time plaintiff received workers' compensation benefits.
3. In 1993 or 1994, plaintiff returned to work in construction work primarily framing and boxing houses, putting up siding, doing inside trim work and digging footings. Plaintiff performed this work until November 1999. Plaintiff was a licensed general contractor and had various numbers of employees.
4. Plaintiff was involved in a diving incident in the late 1980s and contracted the bends. As a result thereof, plaintiff has spastic dysphonia which causes a speech problem. Plaintiff is treated for this condition by receiving special shots every few months.
5. Plaintiff has a history of a motorcycle accident which injured his left shoulder AC joint.
6. In 1997 or 1998, plaintiff found property to develop in Burgaw. Plaintiff purchased this property from defendant Joe Lanier. Plaintiff hired people to clear wood off the property, make roads, dig culverts, etc. During much of this period plaintiff was spending his savings rather than earning wages.
7. In early 1999, plaintiff worked approximately five months in Wrightsville Beach for an individual who owned several properties. Plaintiff also worked in 1999 for defendant Joe Lanier helping to remodel an office building.
8. Defendant Lanier approached plaintiff and plaintiff agreed to provide boxing and trim on a house that Lanier was building. The parties entered into a contract for the performance of this work on 19 October 1999. Plaintiff intended that defendant would provide workers' compensation coverage for himself and his crew, and the contract signed by the parties specifically states "workers' comp covered by Lanier Construction Co. covering Clint Atwood crew." Plaintiff testified that had the contract not included workers' compensation coverage, he would have obtained his own coverage or declined the job.
9. Defendant was primarily engaged in the business of installing pilings. However, defendant also builds houses to sell as "fill in" work when he does not have sufficient piling work. Defendant has operated as a general contractor in many instances even though he is not licensed as a general contractor in North Carolina.
10. The North Carolina licensing board for general contractors filed an action against defendant for operating as a general contractor without a license, and he has agreed to refrain from that activity in the future as part of a consent order.
11. Defendant has one regular employee who helped him in his piling business as well as helped him frame houses, do roofing, etc. Defendant, as was his practice, hired out the plumbing, wiring, installation and sheetrock on the particular house on which plaintiff was injured.
12. At the time of plaintiff's injury, defendant was the owner of the property upon which plaintiff was contracted to work.
13. Plaintiff and defendant entered into a contract on 19 October 1999 providing that plaintiff would perform labor only in placing siding and boxing on the property in question for $5,300.00 and that defendant would provide workers' compensation coverage to plaintiff and his crew.
14. On 4 November 1999, as plaintiff was nailing siding on the last wall, he fell eighteen feet, hit his head on the deck, flipped over and hit the ground. Plaintiff injured his right shoulder, left shoulder, broke three ribs and collapsed a lung. Plaintiff's head hit twice on the right side front and on the left back side.
15. Plaintiff was taken by ambulance to Pender Memorial Hospital. On 9 November 1999, plaintiff was transferred to New Hanover Regional Medical Center where he remained until 19 November 1999. As a result of plaintiff's fall, plaintiff was in a coma, suffered a closed head injury, reinjured his left shoulder AC joint, broke his right shoulder, broke three ribs and suffered a collapsed lung. Plaintiff has recovered from his broken ribs and collapsed lung. However, plaintiff now has memory problems, coordination problems and pain in his right and left shoulders as well as his right arm and neck as a result of his fall on 4 November 1999.
16. On 18 May 2000, plaintiff underwent surgery on his right shoulder performed by Dr. Carter of Wilmington Orthopedic Group. Plaintiff underwent surgery performed by Dr. Carter on his left shoulder on 5 October 2000.
17. Plaintiff continues to have pain in both shoulders, his right arm and his neck. Plaintiff also has persistent problems with his coordination and cannot handle construction equipment or tools or heavy machinery. Plaintiff also has trouble with his memory. Plaintiff has persistent pain in both shoulders, his right arm and neck.
18. Plaintiff has been unable to work since 4 November 1999 due to the injuries resulting from his fall on that date.
19. As a direct and proximate result of plaintiff's pain and coordination problems, plaintiff is unable to work in the construction field or in any manual labor field and might be able to perform sedentary labor at most.
20. On 4 November 1999, defendant did not regularly employ three or more employees in his business.
21. On 4 November 1999, defendant owned the property upon which plaintiff was hired to perform boxing and siding.
22. On 4 November 1999, plaintiff was an independent contractor performing siding and boxing to defendant.
23. On 4 November 1999, plaintiff was not a statutory employee of defendant-employer pursuant to N.C. Gen. Stat. § 97-19.
24. On 19 October 1999, plaintiff and defendant entered into a contract in which plaintiff agreed to perform the labor to "run siding and boxing" in exchange for a fee of $5,300.00 and for defendant providing workers' compensation insurance covering plaintiff and his crew.
25. Plaintiff relied upon the contract in which defendant agreed to provide workers' compensation for plaintiff and his crew when he accepted the job where he would be required to work at great heights. As a result of that reliance, plaintiff did not obtain his own workers' compensation insurance for himself and his crew on that job.
26. On 4 November 1999, plaintiff sustained an injury by accident when he fell from a height of 18 feet and suffered a closed head injury and injuries to both of his arms and his neck.
27. Plaintiff's dysphonia is not related to his fall.
28. As a direct and proximate result of plaintiff's 4 November 1999 work-related injury, plaintiff has been unable to engage in the work he was performing at the time of his injury or any other work.
29. As a direct and proximate result of plaintiff's 4 November 1999 work-related injury, plaintiff was unable to earn the wages he was receiving at the time of his injury in the same or any other employment from 4 November 1999 and continuing.
30. On 4 November 1999, plaintiff earned an average weekly wage of $72.56. There is no evidence of record of plaintiff's wages other than plaintiff's federal tax returns from 1999 and 1998, indicating earnings of $3,773.00 and $1,409.00 respectively. Dividing plaintiff's 1999 income by 52 yields an average weekly wage of $72.56 per week.
31. There is a substantial risk that plaintiff will require future medical treatment as a result of his fall.
32. The medical treatment which plaintiff received at Pender Memorial Hospital, New Hanover Regional Medical Center, Cape Fear Memorial Hospital, Wilmington Orthopedic Group and Coastal Rehabilitation Medicine Associates was reasonably necessary to effect a cure, provide relief and lessen plaintiff's period of disability.
33. Defendant made representations in the form of a contract signed by him which led plaintiff to reasonably believe that defendant would provide workers' compensation for plaintiff and his crew. Plaintiff reasonably relied upon such representations and acting upon the same did not obtain workers' compensation for himself and his crew, as he would have otherwise done. Thus, when plaintiff fell he was not covered by workers' compensation insurance and has not been paid for his time out of work or his considerable medical bills.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 4 November 1999, defendant did not regularly employ three or more employees in his business. N.C. Gen. Stat. § 97-2(1).
2. On 4 November 1999, defendant owned the property upon which plaintiff was hired to perform boxing and siding. N.C. Gen. Stat. § 97-2(1); Purser v. Heatherlin Properties,137 N.C. App. 332, 527 S.E.2d 698 (2000).
3. On 4 November 1999, plaintiff was an independent contractor performing siding and boxing to defendant. N.C. Gen. Stat. § 97-2.
4. On 4 November 1999, plaintiff was not a statutory employee of defendant-employer pursuant to N.C. Gen. Stat. § 97-19.Id.
5. On 4 November 1999, plaintiff sustained an injury by accident when he fell from a height of 18 feet and suffered a closed head injury and injuries to both of his arms and his neck. N.C. Gen. Stat. § 97-2(6).
6. Plaintiff's dysphonia is not related to his fall.
7. As a direct and proximate result of plaintiff's 4 November 1999 work-related injury, plaintiff has been unable to engage in the work he was performing at the time of his injury or any other work. N.C. Gen. Stat. § 97-29.
8. As a direct and proximate result of plaintiff's 4 November 1999 work-related injury, plaintiff was unable to earn the wages he was receiving at the time of his injury in the same or any other employment from 4 November 1999 and continuing. N.C. Gen. Stat. § 97-29.
9. On 4 November 1999, plaintiff earned an average weekly wage of $72.56, yielding a compensation rate of $48.38. There is no evidence of record of plaintiff's wages other than plaintiff's federal tax returns from 1999 and 1998, indicating earnings of $3,773.00 and $1,409.00 respectively. Dividing plaintiff's 1999 income by 52 yields an average weekly wage of $72.56 per week. No other method of computing plaintiff's wage would be fair to either party. This method most closely approximates plaintiff's actual earnings. N.C. Gen. Stat. § 97-2(5).
10. There is a substantial risk that plaintiff will require future medical treatment as a result of his fall and plaintiff is entitled to treatment therefore. N.C. Gen. Stat. § 97-25.1.
11. The medical treatment which plaintiff received at Pender Memorial Hospital, New Hanover Regional Medical Center, Cape Fear Memorial Hospital, Wilmington Orthopedic Group and Coastal Rehabilitation Medicine Associates was reasonably necessary to effect a cure, provide relief and lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
12. On 19 October 1999, plaintiff and defendant entered into a contract in which plaintiff agreed to perform the labor to "run siding and boxing" in exchange for a fee of $5,300.00 and for defendant providing workers' compensation insurance covering plaintiff and his crew. Plaintiff reasonably relied upon the contract in which defendant agreed to provide workers' compensation for plaintiff and his crew when he accepted the job where he would be required to work at great heights. As a result of that reliance, plaintiff did not obtain his own workers' compensation insurance for himself and his crew on that job.
13. Defendant's representations in the form of a contract signed by him led plaintiff to reasonably believe that defendant would provide workers' compensation for plaintiff and his crew. Plaintiff reasonably relied upon such representations and acting upon the same did not obtain workers' compensation for himself and his crew, as he would have otherwise done. Thus, when plaintiff fell he was not covered by workers' compensation insurance and has not been paid for his time out of work or his considerable medical bills. "The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury." Purser v. Heatherlin Properties, 137 N.C. App. 332,527 S.E.2d 698 (2000). Based upon the premise that "it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications," defendant is estopped from denying workers' compensation coverage to plaintiff and is liable for the same, including payment to plaintiff of temporary total disability compensation from 4 November 1999 and continuing, and all medical costs related to his compensable injury. Thompson v. Soles,299 N.C. 484, 487, 263 S.E.2d 599, 602 (1980).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability, defendant shall pay compensation to plaintiff in the amount of $48.38 per week from 4 November 1999 and continuing until further Order of the Commission. Portions of this amount have accrued and shall be paid in a lump sum. The lump sum accrued as of 15 March 2002 (123 weeks) is $5,950.74. All amounts shall be subject to an attorney's fee as approved in Paragraph 2.
2. A reasonable attorney's fee in the amount of 25% of the compensation awarded in Paragraph 1 is hereby approved for plaintiff's counsel payable as follows: 25% of the lump sum accrued arrearages shall be deducted and paid to plaintiff's attorney. Thereafter, 25% of all payments made to plaintiff shall be deducted and paid directly to plaintiff's attorney.
3. Defendant shall pay for all medical compensation received by plaintiff to the extent necessary to effect a cure, give relief or lessen his disability.
4. Defendant shall pay all future medical compensation to the extent necessary to effect a cure or give relief for plaintiff's condition.
5. Defendant shall pay the costs.
IT IS ORDERED that this case is hereby referred to the Industrial Commission's Fraud Section for further proceedings in relation to defendant's uninsured status.
This the _____ day of March, 2002.
 S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________________________ BUCK LATTIMORE CHAIRMAN