***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was a duly qualified self-insured at all times relevant herein.
4. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina from 9 May 1940 until 16 January 1981.
5. The parties stipulated that plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven-month period as required by N.C. Gen. Stat. § 97-57.
6. The parties stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. The parties stipulated that plaintiff's income 52 weeks prior to his date of last employment was $22,904.12.
8. Should N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. §97-61.7 be declared unconstitutional, plaintiff reserves the right to offer additional testimony on the issues of loss of wage earning capacity and/or disability. Defendant objects thereto.
9. The Pre-Trial Agreement of the parties for this case is stipulated into evidence.
10. The employment and income records of plaintiff have been stipulated into evidence.
11. The transcript of Joseph Wendlick's testimony at civil trial, the curriculum vitae of Joseph Wendlick and other documentation produced by defendant in discovery has been stipulated into evidence.
12. The relevant medical records of plaintiff, including documentation from Dr. Kunstling, Dr. Curseen, Dr. Molina, Dr. Johnson, Dr. Grauel, Dr. Bernstein and Dr. Dula and Dr. Rao have been stipulated into evidence.
13. Defendant stipulates that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program which defendant contends is contained in N.C. Gen. Stat. §§ 97-60 through 61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility.
14. Defendant stipulates that the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in the State of North Carolina were the same.
15. Defendant stipulates that the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript, which has been stipulated into evidence included the facilities in North Carolina.
16. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant contends that no grounds exist which would justify such an award. The parties have reached a compromise settlement on this issue, and hereby stipulate that should the decedent's claim be found compensable, the Deputy Commissioner may include in her Opinion and Award the following proposed language:
 The parties have resolved decedent's claim for an award of a 10% penalty pursuant to N.C. Gen. Stat. § 97-12 on a compromise basis. Pursuant to the agreement of the parties, defendant shall pay to decedent, in addition to the compensation awarded herein, an additional 5% of all such compensation, with the exception of medical compensation pursuant to N.C. Gen. Stat. § 97-25. As to compensation ordered paid to decedent in a lump sum, defendant shall pay an additional 5% of any such lump sum. As to any weekly compensation awarded decedent, defendant shall increase the amount of such weekly compensation by 5%. Defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
17. On April 11, 2001, the parties submitted a signed letter in which defendant conceded that plaintiff has contracted asbestosis. Therefore, this is no longer a contested issue in this case.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was an employee of defendant at its Plymouth, North Carolina facility from 9 May 1940 until 6 January 1981.
2. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other stipulations and evidence submitted, plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 9 May 1940 until 6 January 1981. Plaintiff was diagnosed with asbestosis on 10 September 1999.
3. Plaintiff was exposed to asbestos dust on a daily basis at defendant's facility in Plymouth, North Carolina during his employment as a welder. Plaintiff was exposed to asbestos insulation on hot water pipes, steam pipes, and liquor lines, which he had to remove before he could weld the pipes underneath. Tearing off and hammering off the insulation would create large amounts of airborne asbestos dust, which plaintiff would inhale. In addition, plaintiff used old discarded asbestos dryer felts from the paper machines and asbestos gloves to protect his skin and clothes while he was welding. He did not wear a respirator for protection against his asbestos exposure.
4. Plaintiff contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
5. Plaintiff did not report any respiratory distress as a factor in his retirement from defendant's employ in 1981. In 1995, plaintiff began to experience a productive cough in the morning and some wheezing. Plaintiff developed an increase in breathlessness in April 2000, which limited his ability to walk from room to room. Plaintiff's condition was treated with Albuterol and Maxair, and plaintiff achieved some recovery. At the time of the hearing before the Deputy Commissioner, plaintiff was not in respiratory distress and was not taking any breathing medicine.
6. Dr. Albert Curseen diagnosed plaintiff with asbestosis and asbestos related pleural disease on 10 September 1999. Dr. Curseen's diagnosis was based upon plaintiff's history of occupational asbestos exposure and adequate latency period, his chest radiograph, his history of dypsnea on exertion and shortness of breath, the clubbing of his fingernails as well as the pulmonary function testing. Plaintiff saw Dr. Curseen again on 23 May 2000, who confirmed his earlier findings and diagnosis of asbestosis.
7. Dr. Ted Kunstling performed the Advisory Medical Evaluation and determined that based upon the occupational history, restrictive pulmonary impairment on lung function test and the CT scan report, plaintiff probably does have asbestosis and pleural plaques with restrictive lung impairment. He classified plaintiff as having a Class II respiratory impairment due to restrictive lung disease caused by asbestosis. Dr. Kunstling also reported that plaintiff is at increased risk for lung neoplasm and should be periodically monitored. Dr. Kunstling also confirmed his findings and conclusion during his live deposition on 28 February 2001.
8. Dr. Paul Molina interpreted the chest x-ray performed at the panel examination on 17 April 2000, and determined that an accurate determination of the presence or absence of asbestosis could not be made on the basis of this film due to suboptimal film quality and shallow degree of lung inflation. Dr. Molina, a Professor of Radiology at University of North Carolina, confirmed these findings during his deposition on 23 February 2001.
9. Dr. Fred Dula interpreted a CT scan and chest x-ray dated 4 April 2000, and determined that there were mildly increased interstitial markings in the lung bases along with pleural plaques and diffuse pleural thickening consistent with asbestosis. Dr. Dula also interpreted a chest x-ray dated 6 August 1998, and determined there were parenchymal and pleural abnormalities present consistent with pneumoconiosis of asbestosis.
10. Dr. James Johnson interpreted a chest x-ray dated 6 August 1998, and determined that there were parenchymal and pleural abnormalities present consistent with pneumoconiosis of asbestosis.
11. Dr. George Grauel interpreted a chest x-ray dated 28 August 1999, and determined that there were parenchymal and pleural abnormalities present consistent with pneumoconiosis of asbestosis.
12. Dr. Richard Bernstein interpreted the 28 August 1999 chest x-ray and determined that there were parenchymal abnormalities present consistent with pneumoconiosis of asbestosis.
13. Dr. L.C. Rao interpreted the 28 August 1999 chest x-ray and concluded that in the presence of a significant history to asbestos dust, the findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis and asbestos associated pleural fibrosis with diaphragmatic plaques bilaterally.
14. On 11 April 2001, following the hearing before the Deputy Commissioner and the deposition of Dr. Ted Kunstling, defendant stipulated that plaintiff has developed asbestosis.
15. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
16. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by their own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C. Gen. Stat. § 97-60 through 97-61.7.
17. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
18. At hearing before the Full Commission, counsel for plaintiff represented that plaintiff relied upon defendant's representations to him and his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
19. Plaintiff asserts that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
20. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
21. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission hereby makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Haynes v. FeldsparProducing Co., 222 N.C. 163, 22 S.E.2d 275 (1942); Barber v. Babcock Wilcox Construction Company, 101 N.C. App. 564, 400 S.E.2d 735
(1991).
2. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while employed by defendant. N.C. Gen. Stat. §§ 97-52(24) and 97-62.
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff has asserted that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. §§ 97-25; 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel, are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER