***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from 1 January 1946 to 30 December 1951 and 27 March 1968 to 31 December 1993.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven-month period, as is required by N.C. Gen. Stat. § 97-57.
5. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos-containing. There are steam-producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff worked as a custodian for defendant from 1946 until 1952. During this period of time, he was involved in directly picking up broken down asbestos insulation and dust. He was also involved in carrying the torn down material from the area to the dumpster. Plaintiff was also exposed to asbestos while he worked as a janitor from 1968 to 1993 where he was blowing down equipment that was laden with dust from the asbestos. He also cleaned up asbestos insulation that had been torn down during construction and repair projects on pipes, valves and boilers. He was involved in sandblasting pipes and tanks for one to two months that were covered with asbestos insulation. He was not provided with a respirator for protection against the asbestos dust.
7. Plaintiff's income 52 weeks prior to his retirement on 31 December 1993 was $26,637.37, which is sufficient to justify the rate of $342.00 under the North Carolina Workers' Compensation Act.
8. Should G.S. §§ 97-60 through 97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of loss of wage earning capacity and/or disability.
9. Should plaintiff's claim be found compensable, the deputy commissioner may include in his Opinion and Award the following language:
 The parties have resolved plaintiff's claim for an award of a 10% penalty pursuant to G.S. § 97-12 on a compromise basis. Pursuant to the agreement of the parties, defendant shall pay to plaintiff, in addition to the compensation awarded herein, an additional 5% of all such compensation, with the exception of medical compensation pursuant to G.S. § 97-25. As to compensation ordered paid to plaintiff in a lump sum, defendant shall pay an additional 5% of any such lump sum. As to any weekly compensation awarded plaintiff, defendant shall increase the amount of such weekly compensation by 5%. Defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Should plaintiff be awarded compensation pursuant N.C. Gen. Stat. § 97-61.5(b), the deputy commissioner may include in the Opinion and Award language that requires plaintiff to be removed from further exposure pursuant to N.C. Gen. Stat. § 97-62.5(b).
11. The medical records by the following physicians were introduced into evidence without objection by the parties:
1. Dr. Dennis J. Darcey
2. Dr. Fred Dula
3. Dr. L.C. Rao
4. Dr. Richard C. Bernstein
5. Dr. Albert Curseen
6. Dr. Saadat Khan
12. Subsequent to the hearing before the Deputy Commissioner, the transcripts from the depositions of the following medical experts were submitted by counsel for the parties:
1. Dr. Richard Bernstein [January 18, 2000 and July 27, 2000]
2. Dr. Fred Dula [March 6, 2000 and July 20, 2000]
3. Dr. Allen Hayes [February 17, 2000 and August 23, 2000]
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff retired from employment with defendant on 31 December 1993, prior to the date of his diagnosis of asbestosis on 29 May 1998.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1 January 1946 to 30 December 1951 and from 27 March 1968 to 31 December 1993.
4. Plaintiff was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from 1 January 1946 to 30 December 1951 and 27 March 1968 to 31 December 1993.
5. Plaintiff presented to Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University on 29 May 1998. It was the opinion of Dr. Darcey that plaintiff had a history of asbestos exposure, radiographic changes, and pulmonary function studies consistent with asbestosis. At the time plaintiff was diagnosed with asbestosis by Dr. Darcey, he was suffering from the onset of slowly progressive shortness of breath that had begun 4 years prior to the examination. He also had an occasional cough. His pulmonary function testing showed moderate obstructive disease and some mild restriction. Further, he was noted to have bilateral inspiratory crackles in his lungs. Dr. Darcey specifically recommended that plaintiff avoid further exposure to asbestos dust.
6. A CT scan and chest x-ray report dated 25 October 1997, was interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was Dr. Dula's opinion that plaintiff has interstitial and mild pleural changes which would be consistent with asbestosis in the appropriate clinical situation. Dr. Dula also interpreted plaintiff's CT scan and chest x-ray report dated 1 March 2000. It was the opinion of Dr. Dula that the radiographic findings on this chest film are consistent with mild asbestosis.
7. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, also reviewed the chest x-ray dated 25 October 1997. Dr. Rao reported irregular opacities present in all lung zones bilaterally in addition to circumscribed chest wall pleural thickening. It was Dr. Rao's overall conclusion that with a significant exposure history to asbestos dust, these findings are consistent with the diagnoses of bilateral interstitial fibrosis due to asbestosis and asbestos associated pleural fibrosis.
8. Dr. Richard C. Bernstein, a B-reader at Pulmonary Critical Care Medicine, reviewed the chest x-ray dated 25 October 1997. Dr. Bernstein reported both parenchymal and pleural abnormalities consistent with pneumoconiosis.
9. Plaintiff presented to Dr. Albert Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders, on 16 May 1998 to undergo pulmonary functions tests. Dr. Curseen classified plaintiff with a Class 3 Level of AMA Respiratory Impairment based upon the results of those tests.
10. Advisory Medical Panel Physician Dr. Saadat Khan, evaluated plaintiff at the request of the North Carolina Industrial Commission on 27 April 1999. It was the opinion of Dr. Khan that plaintiff is suffering from both asbestosis and obstructive lung disease. When plaintiff was evaluated by Dr. Khan, he was only able to walk one block on level ground before experiencing shortness of breath. Further, plaintiff was experiencing wheezing episodes on occasion and was using bronchodilators to help with these symptoms. Dr. Khan specifically recommended that plaintiff have routine screenings and radiological studies done due to his increased risk of developing lung cancer.
11. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
12. Based upon the examination of plaintiff by Dr. Khan in April 1999, it appears that plaintiff's asbestosis and obstructive lung disease are disabling; however, there is no lay testimony on the extent of plaintiff's disability. If plaintiff is currently totally disabled, further examinations to determine his level of impairment or disability may be necessary. This case should be remanded to a deputy commissioner for an immediate hearing.
13. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
14. At hearing before the Full Commission, counsel for plaintiff represented that plaintiff relied upon defendant's representations to him and his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
15. Plaintiff asserts that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
16. Plaintiff's average weekly wage for the year in which he retired was sufficient to entitle plaintiff to a workers' compensation rate of $342.00.
17. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
18. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission hereby makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57.
2. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while employed by defendant. N.C. Gen. Stat. §§ 97-53(24); 97-62.
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff has asserted that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. §§ 97-25; 97-59.
7. Plaintiff is entitled to any additional benefits he may be due after a hearing on the extent of his disability. Plaintiff is also entitled to undergo at defendant's expense a second or third examination pursuant to N.C. Gen. Stat. § 97-61.1 et seq. if necessary to determine the extent of his disability.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel, are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER