***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant employed plaintiff at its facility in Plymouth, North Carolina from 30 May 1942 through 28 February 1990.
3. Defendant was self-insured during the time of plaintiff's employment with defendant.
4. Plaintiff was last injuriously exposed to asbestos during his employment with defendant. Plaintiff was exposed to asbestos for 30 working days within a seven-month period as required by N.C. Gen. Stat. § 97-57.
5. Defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings contained asbestos. There are steam-producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff worked for defendant for 48 years. Initially he worked in "wet machines". The duties of this position included work in the boiler rooms. Plaintiff eventually became a millwright and worked in close proximity to insulators, individuals who were mixing and using asbestos-containing paste and individuals who were removing asbestos-containing insulation from pipes to make repairs. At times, plaintiff participated in "rip outs" of asbestos insulation while performing construction and repair projects. Plaintiff recalls much of the insulation being labeled as a John Mansfield product. His duties also included grinding asbestos-containing gaskets off pipes and replacing them with new gaskets. Plaintiff recalls one incident in 1981 when he worked for approximately three months around a boiler that had been badly damaged. Much of the insulation material was removed which made the area very dusty. Plaintiff did not use respiratory protection.
7. Plaintiff's income for the 52 weeks prior to his retirement on February 28, 1990 was $45,874.00, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the year 1990.
8. Should G.S. §§ 97-60 through 97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of loss of wage earning capacity and/or disability.
9. Should plaintiff's claim be found compensable, the deputy commissioner may include in his Opinion and Award the following language:
 The parties have resolved plaintiff's claim for an award of a 10% penalty pursuant to G.S. § 97-12 on a compromise basis. Pursuant to the agreement of the parties, defendant shall pay to plaintiff, in addition to the compensation awarded herein, an additional 5% of all such compensation, with the exception of medical compensation pursuant to G.S. § 97-25. As to compensation ordered paid to plaintiff in a lump sum, defendant shall pay an additional 5% of any such lump sum. As to any weekly compensation awarded plaintiff, defendant shall increase the amount of such weekly compensation by 5%. Defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Should plaintiff be awarded compensation pursuant N.C. Gen. Stat. § 97-61.5(b), the deputy commissioner may include in the Opinion and Award language that requires plaintiff to be removed from further exposure pursuant to N.C. Gen. Stat. § 97-62.5(b).
11. The medical records by the following physicians were introduced into evidence without objection by the parties:
1. Dr. Dennis J. Darcey
2. Dr. Merchant
3. Dr. Fred Dula
4. Dr. Allen Hayes
5. Dr. Stephen Proctor
6. Dr. Richard Bernstein
7. Dr. L.C. Rao
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff retired from employment with defendant on 28 February 1990, prior to the date of his diagnosis of asbestosis on 9 December 1997.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1942 until his last date of employment with defendant.
4. Plaintiff was employed by defendant at its Plymouth, North Carolina facility from 30 May 1942 through 28 February 1990.
5. Plaintiff presented to Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University on 9 December 1997. It was the opinion of Dr. Darcey that plaintiff suffers from asbestosis and asbestos related pleural changes. His conclusion was based on the history of significant exposure to asbestos with adequate duration of exposure and latency to develop asbestosis and an ILO chest x-ray and B-read and high resolution CT scan of the chest showing pleural and interstitial changes consistent with asbestos exposure and asbestosis. Further, despite the fact that plaintiff is essentially a non-smoker, Dr. Darcey reports that plaintiff complains of occasional shortness of breath with physical exertion.
6. Dr. Darcey, as part of his medical report, recommended that plaintiff undergo periodic monitoring for progression of asbestos related disease including pulmonary function and chest x-ray, because further deterioration in pulmonary function can occur even after exposure has ceased. Finally, in addition to his increased risk of developing asbestosis, plaintiff was and remains at an increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, compare to non-exposed individuals.
7. Plaintiff's CT scan and chest x-ray report dated 10 October 1997, were interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was Dr. Dula's overall opinion that there were interstitial and pleural changes which would be consistent asbestosis in the appropriate clinical situation. A repeat CT scan and chest x-ray was performed on 1 October 1999, which were also interpreted by Dr. Dula. He reported that his findings were consistent with asbestosis and had not progressed since the last study.
8. Dr. James A. Merchant, Dean of the College of Public Health of the University of Iowa, reviewed the 1 October 1999 chest x-ray and CT scan and provided a B-read and CT report. On the chest x-ray, Dr. Merchant reported parenchymal and pleural abnormalities consistent with pneumoconiosis with a profusion rating of 1/1 in the lower lung zones. On the CT scan, Dr. Merchant reported that it was consistent with early asbestosis and pleural thickening.
9. Dr. Richard C. Bernstein, a NIOSH B-reader, evaluated the chest x-ray dated 1 October 1999 and provided a B-read report. It was Dr. Bernstein's conclusion that there were parenchymal and pleural abnormalities present consistent with pneumoconiosis. He reports abnormalities in plaintiff's lower and mid zones with a profusion rating of 1/0.
10. In a B-read report written by Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, who reviewed the 1 October 1999 chest x-ray, Dr. Rao reported irregular and rounded opacities present in plaintiff's lower lung zones bilaterally of category t/q with 1/0 profusion and circumscribed chest wall thickening bilaterally. Dr. Rao concluded that with a significant exposure history to asbestos dust, these findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis and asbestos associated pleural fibrosis.
11. Dr. Stephen Proctor, a panel physician who examined plaintiff on 12 January 1999, provided an Advisory Medical Evaluation Report. After a full physical evaluation, review of chest x-ray and CT scan, and performance of pulmonary function test, it was the conclusion of Dr. Proctor that plaintiff has asbestosis and pleural plaques and thickening related to asbestos exposure.
12. During his deposition, Dr. Proctor testified that plaintiff suffered from dyspnea on exertion, productive cough, occasional wheezing as well as weakness and a lack of energy. Dr. Proctor testified that asbestosis is a progressive, incurable lung disease. Further, he testified that plaintiff needs to be medically monitored for progression of his asbestosis and since asbestos is a carcinogen, also for the development of a pulmonary malignancy.
13. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
14. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
15. At hearing before the Full Commission, counsel for plaintiff represented that plaintiff relied upon defendant's representations to him and his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
16. Plaintiff asserts that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
17. Plaintiff's average weekly wage for the year in which he retired was sufficient to entitle plaintiff to the maximum workers' compensation rate of $390.00 during the year 1990.
18. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
19. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission hereby makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57.
2. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while employed by defendant. N.C. Gen. Stat. §§ 97-53(24); 97-62.
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff has asserted that he was not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. §§ 97-25; 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel, are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER